IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-193-D

| | |
|---|---|
| IBRAHIM OUDEH, and ) | |
| TERESA SLOAN-OUDEH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| GOSHEN MEDICAL CENTER, INC., ) | |
| ) | |
| Defendant. ) | |

On April 7, 2022, Ibrahim Oudeh and Teresa Sloan-Oudeh (collectively, "plaintiffs") filed a complaint in Cumberland County Superior Court against Goshen Medical Center, Inc. ("Goshen" or "defendant") alleging breach of contract and other state law claims concerning Goshen's alleged failure to perform in accordance with a $1,400,000 promissory note for the sale of plaintiffs' medical practice to Goshen [D.E. 1-1]. On December 29, 2022, this court entered an order dismissing with prejudice the Oudehs' complaint [D.E. 28]. The court dismissed the complaint due to claim preclusion and judicial estoppel based on 2018 litigation involving the same claims from plaintiffs against Goshen [D.E. 28] 2. On September 18, 2023, the United States Court of Appeals for the Fourth Circuit affirmed this court's dismissal [D.E. 33].

On September 29, 2023, Goshen moved for sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this court's inherent authority against plaintiffs or plaintiffs' attorneys, asked for an award of attorneys' fees and costs in the amount of $141,921.05 [D.E. 35], and filed a memorandum in support [D.E. 36]. On November 10, 2023, Brenton D. Adams, filed a notice of appearance on behalf of the plaintiffs [D.E. 39] and responded in opposition on behalf

of the individual plaintiffs [D.E. 40, 41]. Adams was not the attorney of record for the plaintiffs in the underlying action. On November 10 and 11, 2023, attorneys with the Charleston Group, plaintiffs' original and continuing attorneys in this case, filed an additional response in opposition on behalf of plaintiffs with a memorandum and numerous exhibits [D.E. 42, 43, 44]. On November 13, 2023, the Charleston Group filed another response in opposition to address the motion as against the firm [D.E. 46]. On November 30, 2023, Goshen replied [D.E. 48]. On that same day, Adams filed an "amended response" to the motion on behalf of the individual plaintiffs [D.E. 49, 50]. On December 1, 2023, Goshen moved to strike the responses and memorandum in opposition that Adams filed on behalf of the plaintiffs [D.E. 51, 52].

On December 4, 2023, the Charleston Group filed a "Response to Goshen Medical Center, Inc.'s Reply Brief" [D.E. 53]. That same day, Goshen moved to strike or otherwise disregard the Charleston Group's unauthorized surreply [D.E. 54, 55]. On December 5, 2023, the Charleston Group moved for leave to file a surreply [D.E. 56] and filed a memorandum in support [D.E. 57].

As explained below, the court grants defendant's motion for sanctions [D.E. 35], denies as moot defendant's motions to strike [D.E. 51, 54], denies as moot the Charleston Group's motion for leave to file a surreply [D.E. 56], and imposes sanctions of $10,000.00 in favor of Goshen and against plaintiffs' counsel Jonathan Charleston and Jose Coker of the Charleston Group.

I.

In 2018, plaintiffs filed a complaint alleging breach of contract against Goshen concerning the promissory note that Goshen issued to purchase plaintiffs' medical practice. See Oudeh v. Goshen Med. Ctr., Inc., 5:18-CV-576 (E.D.N.C. Dec. 4, 2018) ("2018 Action"), [D.E. 1]. Before plaintiffs filed the 2018 Action, the United States and the State of North Carolina (the "governments") sued plaintiffs on January 12, 2018, for violating the False Claims Act ("FCA"),

2

and the court authorized the issuance of prejudgement writs of garnishment prohibiting Goshen from making any payments to plaintiffs regarding the sale of plaintiffs' medical practice. See United States v. Oudeh et al., 5:18-CV-9 (E.D.N.C. Jan. 12, 2018) ("2018 FCA Action"), [D.E. 24]. Because of the writs of garnishment, Goshen interpleaded the governments into the 2018 Action, and the governments removed the 2018 Action to this court. See 2018 Action, [D.E. 1].

On April 28, 2020, plaintiffs and the governments reached a settlement agreement on the FCA claims ("FCA Settlement Agreement"). See 2018 FCA Action, [D.E. 126]. Under the FCA Settlement Agreement, plaintiffs relinquished their interest in $1,471,312 derived from the cash payments due under the Goshen promissory note. Id.; see also id., [D.E. 123-25]. Following the parties' joint submission informing the court of the FCA Settlement Agreement, the court dismissed with prejudice as moot plaintiffs' 2018 Action for breach of the promissory note. See 2018 Action, [D.E. 44].

Plaintiffs moved to reconsider the dismissal and filed a memorandum in support. See id., [D.E. 45–46]. On August 26, 2020, Goshen responded in opposition. See id., [D.E. 47]. On October 15, 2020, the court adopted Goshen's position in its response and denied plaintiffs' motion for reconsideration. See id., [D.E. 50]. Plaintiffs appealed. See id., [D.E. 51–53].

On March 8, 2022, the United States Court of Appeals for the Fourth Circuit affirmed the court's order dismissing as moot the 2018 Action. See Oudeh v. Goshen Med. Ctr., Inc., No. 20-2238, 2022 WL 683361, at *1 (4th Cir. Mar. 8, 2022) (per curiam) (unpublished). The Fourth Circuit, however, modified the court's judgment to a dismissal without prejudice because the court lacked subject-matter jurisdiction after the court determined the action was moot. See id.

Plaintiffs initiated the 2022 Action on the theory that issue preclusion did not bar breach of contract claims "expressly carved out as permissible by [this court's] Order" of April 20, 2020,

3

and because the plaintiffs sought only damages and attorneys' fees from the alleged breach of the promissory note, which were forms of relief allegedly carved out of the FCA Settlement Agreement. [D.E. 25] 9–11. On May 18, 2022, shortly after the United States, a then-third party defendant, removed the 2022 Action to this federal court, but before the parties litigated Goshen's subsequent motion to dismiss, Goshen and the Oudehs entered into a settlement agreement to resolve separate, outstanding employment claims. See [D.E. 35-2] 2. Brenton D. Adams, instead of the Charleston Group, represented the Oudehs for that settlement agreement. See [D.E. 36] 6. The settlement agreement in the employment cases included a stipulation that the Oudehs "agree to consult with their counsel, R. Jonathan Charleston in the Ibrahim Oudeh and Teresa Sloan-Oudeh (Plaintiffs) v. Goshen Medical Center, Inc. (Defendant) (file nuber 22 CVS 1972) regarding dismissal." [D.E. 35-2] 2.

In late June 2022, the Oudehs communicated with the Charleston Group about the settlement agreement in the employment cases and delivered a letter asking that the Charleston Group "obtain an order allowing [them] to withdraw as counsel for [the Oudehs] in the [2022 Case] filed against Goshen." [D.E. 46] 9–10. Brenton D. Adams confirmed for Goshen that the Oudehs "wrote to Charleston and demanded that he obtain an order from the Court relieving [Charleston] as their lawyer." [D.E. 35-3] 1. On July 6, 2022, Ms. Oudeh called to inform the Charleston Group about the contents of the employment claims settlement agreement. See [D.E. 44-4] 13. Later that night, Ms. Oudeh texted a copy of the signed employment claims settlement terms to the Charleston Group. See [D.E. 44-8]. Based on the information that Ms. Oudeh conveyed, the Charleston Group believed that the agreement only required the Oudehs to "consult" with the Charleston Group concerning dismissal of the 2022 Action. See [D.E. 46] 11. The Charleston

4

Group advised the Oudehs accordingly, and the Oudehs consented to the Charleston Group proceeding with the 2022 Action. See id.; [D.E. 44-4] ¶¶ 62–70.

On July 6, 2022, based on the duplicate 2018 Action, the settlement agreement in the employment cases, and the representation from Brenton D. Adams that the Oudehs wrote to the Charleston Group asking that the attorneys move to be removed from the case, Goshen sent a Rule 11 letter to the Charleston Group requesting that plaintiffs dismiss the 2022 Action. See [D.E. 35-4]. The Charleston Group did not agree to the request and proceeded with the 2022 Action.

On December 29, 2022, this court rejected plaintiffs' arguments and dismissed the 2022 Action, holding that because this court already ruled that plaintiffs forfeited their interest in the promissory note, plaintiffs were precluded from asserting claims for breach of contract or attorneys' fees stemming from an alleged breach of the promissory note. See [D.E. 28] 8–10. Alternatively, the court held that the doctrine of judicial estoppel barred the claims in the 2022 Action, because plaintiffs could not assert an interest in the promissory note in this action after taking the position in the FCA settlement proceedings that disclaimed their interest in the promissory note. See id. at 10–11. On September 18, 2023, the United States Court of Appeals for the Fourth Circuit affirmed this court's dismissal. See [D.E. 33]; Oudeh v. Goshen Med. Ctr., Inc., No. 23-1207, 2023 WL 6058484 (4th Cir. Sept. 18, 2023) (per curiam) (unpublished).

II.

Rule 11 requires an attorney to make a reasonable inquiry to determine that a complaint is well grounded in both fact and law and prohibits an attorney from filing a complaint for an improper purpose. See Fed. R. Civ. P. 11(b). In determining whether a complaint is well grounded in fact, courts use "[a]n objective test . . . to determine the reasonableness of a lawyer's prefiling investigation." In re Kunstler, 914 F.2d 505, 514 (4th Cir. 1990) (quotation omitted). An attorney

fails to satisfy Rule 11(b)(3) when the attorney has not obtained any supporting information concerning the factual allegation before filing a complaint. See Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006). A legal argument violates Rule 11 (b)(2) when it has "absolutely no chance of success under the existing precedent." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002) (quotation omitted); see Morris, 448 F.3d at 277. A legal position, however, must be more than unsuccessful to warrant sanctions. See Hunter, 281 F.3d at 153–54. Attorneys are allowed to seek good faith expansions and changes of the law. See Fed. R. Civ. P. 11(b)(2); Blue v. U.S. Dep't of Army, 914 F.2d 525, 534–36 (4th Cir. 1990). Sanctions are warranted only when "a reasonable attorney in like circumstances could not have believed his actions to be legally justified." Hunter, 281 F.3d at 153 (quotation omitted). Furthermore, a complaint violates Rule 11(b)(1) when an attorney files it without the central and sincere purpose of vindicating rights in court. See Kunstler, 914 F.2d at 518. Improper purposes include filing suit as leverage in separate proceedings, to obtain discovery for use in other proceedings, and to embarrass, intimidate, or harass. See id. at 519.

Under 28 U.S.C. § 1927, a court may award excess costs, expenses, and attorneys' fees incurred because "[a]ny attorney ... multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Section 1927 "addresses a narrower field of conduct than that which may be addressed under the court's inherent authority because § 1927 permits sanctions only for bad-faith conduct that wrongfully multiplies proceedings." Six v. Generations Fed. Credit Union, 891 F.3d 508, 520 (4th Cir. 2018); see E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 522– 23 (4th Cir. 2012); In re Crescent City Ests., LLC, 588 F.3d 822, 831 (4th Cir. 2009); DeBauche v. Trani, 191 F.3d 499, 511–12 (4th Cir. 1999); Chaudhry v. Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999); Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991); Bakker v.

6

Grutman, 942 F.2d 236, 242 (4th Cir. 1991); Blue, 914 F.2d at 544–45 (collecting cases); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1140 (4th Cir. 1986); Blair v. Shenandoah Women's Ctr., Inc., 757 F.2d 1435, 1438 (4th Cir. 1985).

A court also may impose sanctions, including attorneys' fees, under its inherent power. See Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991); Brubaker, 943 F.2d at 1382 n.25. To do so, the court must find bad faith in the conduct of litigation. See Chambers, 501 U.S. at 43–46; Brubaker, 943 F.2d at 1382 n.25.

Goshen moves for sanctions against plaintiffs or the Charleston Group based on plaintiffs filing and maintaining this second action against Goshen for breaches of the promissory note. See [D.E. 36] 1–3. As for Rule 11, Goshen argues that sanctions are appropriate because the plaintiffs attempted to "relitigate issues already decided by the court." Id. at 9 (quoting CarMax Auto Superstores, Inc. v. Sibley, 767 F. App'x 462, 464 (4th Cir. 2019)).

First, Goshen argues that this court's order in the 2018 Action made clear that plaintiffs relinquished their interest in the promissory note after settling with the governments. See id. at 10. Even though plaintiffs argue that they seek a different remedy in the 2022 Action under a separate theory of recovery concerning the promissory note, Goshen argues that "so long as the subject matter of the two suits is substantially the same, a plaintiff cannot avoid the bar of res judicata simply by changing the theory of recovery or seeking a different remedy." Id. at 11 (quoting Snell v. Mayor and City Council of Havre de Grace, 837 F.2d 173, 176 (4th Cir. 1988)). Second, Goshen argues that plaintiffs' motion to remand in the 2022 Action was frivolous because the court already denied the exact same motion in the 2018 Action. See [D.E. 36] 12 (citing Chase v. Shop "N Save Warehouse Foods, Inc., 110 F.3d 424, 426 (7th Cir. 1997)). Third, Goshen argues

7

that litigating without the consent or contrary to the direction of the plaintiffs warrants sanctions against the Charleston Group. See [D.E. 36] 14.

As for section 1927 sanctions, Goshen argues that refiling claims already conclusively adjudicated and requesting remand despite prior findings of federal court jurisdiction constitute "unreasonable and vexatious multiplication of proceedings" under section 1927. See id. at 17–18; see also Griffin Whitaker, LLC v. Torres, Civil Action No. 10–0725, 2010 WL 3895384, at *5 (D. Md. Oct. 1, 2010) (unpublished). Goshen also argues that the court should impose sanctions under its inherent authority if, for technical reasons, the court concludes that sanctions are not warranted under either Rule 11 or section 1927. See [D.E. 36] 20; cf. Dostert v. Harshbarger, 911 F.2d 721, *4–5 (4th Cir. 1990) (unpublished table decision).

A.

Initially, the court addresses Goshen's argument for sanctions based on the Oudehs' alleged obligation to dismiss the 2022 Action because of stipulations in the employment claims settlement agreement. The court declines to sanction either plaintiffs or the Charleston Group on this ground.

The stipulation in the employment claims settlement agreement memorialized the commitment from the Oudehs to "consult with their counsel, R. Jonathan Charleston in the case Ibrahim Oudeh and Teresa Sloan-Oudeh (Plaintiffs) v. Goshen Medical Center, Inc. Defendant (file number 22 CVS 1972) regarding dismissal." [D.E. 35-2] 2 (emphasis added). If Goshen believed it reached an agreement for the Oudehs to dismiss the complaint in the 2022 Action, Goshen should have memorialized that requirement in the agreement. Goshen presents no evidence to rebut the sworn affidavits from the Charleston Group and the Oudehs concerning whether the Oudehs "consulted" with their attorneys and consented to continuing the 2022 Action

8

after that consultation. See [D.E. 44-4] ¶¶ 62–70; [D.E. 46] 11. Thus, the court rejects this ground for sanctions.

B.

Next, the court addresses Goshen's argument that filing and maintaining the 2022 Action warrants sanctions. Courts have granted Rule 11 sanctions where the doctrine of res judicata barred the claims. For example, in Kalos v. Centennial Surety Associates, the court sanctioned the plaintiff after the plaintiff initiated more than a dozen lawsuits over a seven-year period concerning foreclosures and surety bonds, with the underlying issues having been fully litigated. See Kalos v. Centennial Sur. Assocs., Inc., Civil Action No.12-1532, 2012 WL 6210117, at *1, 4, 5, & n.1 (D. Md. Dec. 12, 2012) (unpublished). In Black v. New Jersey, the court sanctioned the plaintiff for filing the same action in the Middle District of North Carolina twice and once in the Eastern District of North Carolina. See Black v. New Jersey, No. 1:10CV727, 2010 WL 4962950, at *2 (M.D.N.C. Nov. 30, 2010) (unpublished). In McLaughlin v. Bradlee, the court initially did not impose sanctions despite finding that the plaintiff's previous litigation plainly foreclosed the action, in the hopes the plaintiff would then cease and desist. See McLaughlin v. Bradlee, 602 F. Supp. 1412, 1417 (D.D.C. 1985). But the court did impose sanctions after the litigant filed four post-judgment motions even after notice from the court. See id. at 1417–18. Notably, courts also have awarded sanctions based on a collateral estoppel finding. See, e.g., CarMax, 767 F. App'x at 464; Orange Prod. Credit Ass'n v. Frontline Ventures, Ltd., 792 F.2d 797, 800–01 (9th Cir. 1986).

The Charleston Group argues that a reasonable basis in law and fact existed to file and pursue the 2022 Action. First, the Charleston Group argues that the 2022 Action sought a different theory of relief that was excluded from the FCA settlement agreement, namely damages and

9

attorneys' fees resulting from the breach of the promissory note, separate from the underlying amount due under the note. See [D.E. 25] 9–11. Second, the Charleston Group argues that the Fourth Circuit's ruling in the 2018 Action switching the dismissal to without prejudice meant that the Oudehs could again seek relief in state court. See [D.E. 42] 8; [D.E. 44-4] ¶ 46.

The court rejects these arguments. In the Oudehs' motion for reconsideration during the 2018 Action, the Oudehs argued to this court that the FCA settlement agreement exclusion provisions allowed the Oudehs to seek limited damages and attorneys' fees resulting from breach of the note separate from seeking the underlying debt obligation. See No. 5:18-cv-576, [D.E. 45] ¶¶ 8–10. This court rejected that argument. Furthermore, the Oudehs argued on appeal in the 2018 Action that the FCA settlement "does not render the claims related to the breach of the Note in this case moot, as said claims were expressly excluded by the Governments," and that "the case is not moot" because "the Oudehs have a concrete interest in the outcome of the litigation against Goshen because they are seeking to recover damages, costs, and attorneys' fees and other contractual remedies incurred because of Goshen's breach of the note." See Appellant Brief, No. 20-2238 [D.E. 20] 21 (4th Cir. 2020). The Fourth Circuit rejected that argument and affirmed this court's mootness conclusion. Accordingly, the court rejects the Charleston Group's attempt to differentiate the 2022 Action from the 2018 Action based on the relief sought. Instead, the court agrees with Goshen. See, e.g., [D.E. 36] 6–8, 10–13; [D.E. 48] 1–3.

The court also rejects the argument that the Fourth Circuit changing the 2018 Order of this court to a dismissal without prejudice helps the Oudehs or the Charleston Group. The Fourth Circuit did not change the order to a dismissal without prejudice because of any open questions about the scope of the FCA settlement exclusions or the effect of the Oudehs disclaiming the promissory note obligations. Instead, the Fourth Circuit held that because this court correctly

10

found the Oudehs' state law claims moot, "the district court lacked jurisdiction." Oudeh, 2022 WL 683361, at *1. That lack of subject-matter jurisdiction due to mootness required dismissal without prejudice. See id. Thus, the Fourth Circuit held that this court had no jurisdiction over the Oudehs' state law claims concerning the promissory note with Goshen because the claims were moot. In the 2022 Action, the Charleston Group repeated the same essential arguments for the Oudehs concerning the exclusionary provisions of the FCA settlement agreement and the limited theory of relief sought. See [D.E. 25] 9–11; [D.E. 46] 12–13; [D.E. 48] 1–3. The Oudehs presented no new facts or arguments to support a claim that could avoid this court's and the Fourth Circuit's mootness conclusion. See, e.g., CarMax, 767 F. App'x at 464; Orange Prod. Credit Ass'n, 792 F.2d at 800–01.

The same analysis applies to the Oudehs' motion to remand during the 2022 Action. The court finds that refiling the claims presented in the 2022 Action, moving to remand during that action, and appealing after losing violated Rule 11(b)(2). Accordingly, the court finds that it should sanction the Charleston Group for filing and maintaining the 2022 Action. See, e.g., Lokhova v. Halper, 30 F.4th 349, 358 (4th Cir. 2022).

The court acknowledges that refiling complaints that fail on res judicata grounds could potentially give rise to sanctions under Rule 11(b)(1). The court finds, however, that the conduct in this case falls more appropriately under Rule 11(b)(2) prohibiting pleadings based on frivolous legal arguments.

Rule 11(b)(1) concerns the filing of suits that are presented for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." See Fed. R. Civ. P. 11(b)(1). Here, the Oudehs appear to have filed the 2022 Action, and consented to continuing the 2022 Action, based on a gross misunderstanding that they still had a legal claim to

11

damages and costs, including attorneys' fees, associated with the breach of the promissory note because of the exclusionary provisions in the FCA settlement agreement. See [D.E. 44-4] 15. Goshen and the Charleston Group both provide evidence that the Oudehs initially considered dropping the 2022 Action after signing the employment claims settlement agreement. See, e.g., [D.E. 35-3] 1; [D.E. 44-4] 13; [D.E. 44-8]. The case only proceeded when the Oudehs consulted with the Charleston Group concerning the requirements of the settlement claims agreement and the Charleston Group apparently opined that the Oudehs "could proceed with claims against Goshen relating to breach of the Note." [D.E. 44-4] 10; see id. at 13. Thus, rather than originating because of bad faith or attempts to harass, the 2022 Action originates with the Charleston Group's profoundly erroneous advice to the Oudehs that the "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument . . . ." Fed. R. Civ. P. 11(b)(2). Accordingly, the court restricts its finding of sanctionable conduct to whether the Charleston Group violated Rule 11(b)(2). Because the court sanctions the Charleston Group under Rule 11(b)(2), the court declines to examine whether the Charleston Group's conduct constitutes bad faith on the part of the attorneys as required for sanctions under 28 U.S.C. § 1927 or the court's inherent authority.

C.

As for the appropriate sanction, "Rule 11 does not specify the sanction to be imposed for any particular violation of its provisions, [but] the advisory committee note to the Rule's 1993 amendments provides guidance with an illustrative list." Hunter, 281 F.3d at 150–51. Factors to consider in determining the appropriate sanction include whether the conduct was willful or part of a pattern of activity, whether it infected the entire pleading, whether it affected the cost and duration of the litigation process, whether the responsible person has engaged in similar conduct

12

in other litigation, the financial resources of the responsible person, and the amount needed to deter similar activity by others. Id.

"[A] sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "[R]easonable" attorney's fees in the context of Rule 11 "does not necessarily mean actual expenses and attorney's fees." Fahrenz v. Meadow Farm P'ship, 850 F.2d 207, 211 (4th Cir. 1988); see Miltier v. Downes, 935 F.2d 660, 665 (4th Cir. 1991) (reversing a Rule 11 sanction award of attorneys' fees for reconsideration of the "least severe sanction"). "Because the amount of a monetary sanction is not based solely on any claimed amount of attorney's fees, but rather on all of the factors listed herein, the risk of an erroneous calculation based on fee statements is less troublesome in the context of a Rule 11 sanction than in attorney's fees cases." Kunstler, 914 F.2d at 523. Rule 11 "should not blindly be used to shift fees," but the amount of monetary sanctions should reflect the primary purpose of Rule 11—deterring future litigation abuse. See id. at 522–23. Thus, if a court awards a monetary sanction, four factors guide how to calculate a sanction: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum sanction needed to deter future frivolous filings; (3) the party's ability to pay; and (4) the severity of the party's Rule 11 violation." Id. at 523.

The court finds that the sanctionable conduct in this action infected the pleadings and motions practice before both this court and the Fourth Circuit, and significantly affected the cost and duration for Goshen to relitigate these claims. Furthermore, the court finds admonition alone insufficient to prevent future frivolous filings and conduct of this kind. After all, Goshen's Rule 11 notice already provided ample notice to the Charleston Group concerning the mootness of these

13

claims. See [D.E. 35-4]. Thus, the court awards sanctions against the Charleston Group to deter frivolous filings. See Fed. R. Civ. P. 11(c)(4).

Goshen seeks $141,921.50 in attorneys' fees and costs that it documented through affidavits and billing entries. See [D.E. 36] 23; [D.E. 35-6, 35-7]. Goshen's requested attorneys' fees are detailed in the table below.

| Timekeeper | Type | Rate | Adjusted Hours | Subtotal Fees Billed |
|---|---|---|---|---|
| George J. Oliver | Lead Partner | $525 | 79.6 | $41,790.00 |
| Stephen W. Petersen | Partner | $525 | 83.6 | $43,890.00 |
| Jeffrey R. Whitley | Associate | $405-430 | 115.9 | $50,209.00 |
| Jeanne Foley | Paralegal | $205-235 | 24.7 | $5,540.50 |
| | | Total: | 303.8 | $141,429.50 |

See [D.E. 35-6] 3.

The billing entries include time billed starting from when plaintiffs filed the 2022 Action through counsel's September 2023 efforts to prepare the motion for sanctions. A portion of the billing entries concern convincing the Oudehs to dismiss the 2022 Action based on the stipulations in the employment claims settlement agreement and researching Rule 11 sanctions. See, e.g., [D.E. 35-6] 12–36. Because the court rejects that ground for sanctions, the court has removed billing entries concern that ground for sanctions. Cf. Kunstler, 914 F.2d at 523; CarMax, 767 F. App'x at 465. Furthermore, the billing entries reveal that Goshen's attorneys prepared extensive support for their Rule 11 motion early in the course of litigating the 2022 Action, as reflected in the thorough notice presented to the Charleston Group on July 6, 2022. See [D.E. 35-4]. Although Rule 11(c)(2) allows the court to award fees incurred for preparing the Rule 11 motion, the court has removed later billing entries for preparing the Rule 11 motion that the court deems duplicative.

The court finds Goshen has met its burden to demonstrate that the requested rates are within the customary and reasonable rate for commercial litigation in the Eastern District of North

14

Carolina and on appeal before the Fourth Circuit. See [D.E. 35-7] 2. After the court's revisions to remove entries the court finds related to the denied ground for sanctions and for potential duplicative entries related to preparing the final Rule 11 motion and briefing, the court initially calculates the following reasonable attorneys' fees.

| Timekeeper | Type | Rate | Adjusted Hours | Subtotal Fees Billed |
|---|---|---|---|---|
| George J. Oliver | Lead Partner | $525 | 46.7 | $24,517.50 |
| Stephen W. Petersen | Partner | $525 | 80.5 | $42,262.50 |
| Jeffrey R. Whitley | Associate | $405 | 97.4 | $39,447.00 |
| Jeanne Foley | Paralegal | $205 | 24.1 | $4,940.50 |
| | | Total: | 248.7 | $111,167.50 |

The court finds that Goshen reasonably incurred a total of $111,167.50 in attorneys' fees while defending against the 2022 Action. The court, however, does not award this full amount. After all, a court should not blindly use Rule 11 to shift fees. Instead, the court should identify the minimum sanction needed to deter future frivolous filings. See Miltier, 935 F.2d at 665; Kunstler, 914 F.2d at 522–23; U.S. Med Supplies, LLC v. Rakaa Med. Co. Ltd., No. 5:20-CV-67, 2023 WL 5424762, at *6, 9 (E.D.N.C. July 24, 2023) (unpublished), appeal docketed, No. 23-1876 (4th Cir. 2023). Here, the severity of the Charleston Group's Rule 11(b)(2) violation is limited to one frivolous action and appeal. Moreover, the Charleston Group presents no evidence of an inability to pay sanctions, and Goshen presents no evidence of other sanctionable conduct from the Charleston Group. Cf. Kunstler, 914 F.2d at 522–23

The court awards a total monetary sanction of $10,000.00 in favor of Goshen and against plaintiffs' counsel Jonathan Charleston and Jose Coker of the Charleston Group. The court finds that this sanction appropriately accounts for a portion of the fees and costs that Goshen incurred in defending against the 2022 Action and reflects the minimum monetary sanction to deter violations of Rule 11(b)(2). The court declines to invite further affidavits concerning fees accrued

15

since Goshen filed this motion because the court determines that this $10,000.00 sanction is the minimum sanction needed to deter sanctionable conduct. The court imposes this sanction only on Jonathan Charleston and Jose Coker of the Charleston Group. See Fed. R. Civ. P. 11(c)(5)(A); Lokhova, 30 F.4th at 358.

D.

Goshen moves to strike certain memoranda that Brenton D. Adams filed on behalf of the individual plaintiffs. See [D.E. 51]. Goshen also moves to strike the Charleston Group's "Response to Goshen Medical Center's Reply Brief" as an unauthorized surreply. See [D.E. 54]. The Charleston Group moves for leave to file the requested surreply. See [D.E. 56]. The court has reviewed the disputed filings, and the filings do not change the court's analysis. Thus, the court denies the motions as moot.

III.

In sum, the court GRANTS defendant Goshen's motion for sanctions [D.E. 35], DENIES as moot Goshen's motions to strike and the Charleston Group's motion for leave to file a surreply [D.E. 51, 54, 56], and ASSESSES a $10,000.00 sanction in favor of defendant and against plaintiffs' counsel Johnathan Charleston and Jose Coker of the Charleston Group.

SO ORDERED. This 16 day of August, 2024.

JAMES C. DEVER III
United States District Judge